UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_7/27/15___
```

-----------------------------------------------------------X
                                         :

DEMOS P. DEMOPOULOS, et al.,           :

                       Plaintiffs,    :

                                 :         14 Civ. 7107 (LGS)

           -against-           :

                                 :        OPINION & ORDER

ANCHOR TANK LINES, LLC, et al.,      :

                    Defendants. :

                                 :

-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       This is the latest in what is now an eight-year saga of lawsuits. Plaintiffs, who are trustees and fiduciaries of various employer contribution funds governed by the Employment Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1132, et seq., ("ERISA") seek damages from Defendants Anchor Tank Lines LLC, Tank Acquisition Company LLC, Leonard Baldari, Robert Baldari and Michael David Hiller in connection with payments that were required but not made to International Brotherhood of Teamsters Local 553's ("Local 553") benefit funds. Plaintiffs also seek to enforce judgments Plaintiffs have been awarded in the past. Defendants move to dismiss. For the reasons that follow the motions are granted, and the Complaint is dismissed.

## I.       BACKGROUND

       The following is based on allegations in the operative Amended Complaint (the "Complaint"), documents attached to or integral to the Complaint, and facts of which the Court is permitted to take judicial notice. As required for the present motion, all factual allegations in the Complaint are assumed to be true.

### A.  The Parties

       Plaintiffs are the trustees and fiduciaries (the "Trustees") of the Local 553 Benefit Fund, the Local 553 Pension Fund and the Local 553 Deferred Compensation Fund (the "Funds"). The

Funds are multi-employer employee benefit plans governed by ERISA.  The Funds collect and receive contributions and provide benefits to eligible participants pursuant to agreements between Local 553 and the participants' employers.

This case arises out of the failure of two non-parties to make payments to the Funds between 2007 and 2009.  The two non-parties are Anchor Tank Lines Corp. ("Anchor I"), known until August 2008 as Mystic Tank Lines Corp., and Reliable Transit Corp. ("Reliable), known until September 2007 as Anchor Transit Corp.  Reliable was a wholly owned subsidiary of Anchor I.  Anchor I and Reliable were in the business of transporting "oil and other products" in and around New York City, and operated out of 19-01 Steinway Street, Queens, New York.

Anchor I and Reliable employed Local 553 members and were required to make monthly contributions to the Funds pursuant to collective bargaining agreements with Local 553.  Reliable was also obligated to pay withdrawal liability to one of the Funds for its proportionate share of the Fund's unfunded vested benefits.  According to the Complaint, Defendants Leonard Baldari, Robert Baldari and Michael David Hiller ("Hiller") (collectively, the "Individual Defendants") "were the principal owners and/or executives of Anchor I and Reliable, which were closely held entities."  The Individual Defendants controlled whether and to what extent Anchor I and Reliable contributed to the Funds.

On July 12, 2007, Defendants Leonard Baldari and Hiller were indicted in the United States District Court for the Eastern District of New York.  The indictment charged that Leonard Baldari and Hiller used Anchor I, Reliable and other entities to embezzle interstate shipments of oil products and conspired to launder money.  The Indictment was unsealed on July 19, 2007. *See United States of America v. Leonard Baldari*, No. 07 Cr. 568 (E.D.N.Y.) ("*U.S. v. Baldari*"),

Dkt. No. 4.  The Indictment identifies Leonard Baldari as the majority shareholder of Anchor I and a 50% owner of Reliable, and Hiller as the Chief Financial Officer of Anchor I and the president and 50% owner of Reliable.  *U.S. v. Baldari*, Dkt. No. 1, ¶¶ 6-7.  The Indictment alleges that, upon the conviction of Leonard Baldari and Hiller, the Government would seek forfeiture of property including:

- "A sum of money equal to at least approximately $50,000,000 in United States currency for which [Leonard Baldari and Hiller] are jointly and severally liable";

- "All right, title and interest of [Leonard Baldari and Hiller] in [Anchor I], and all the proceeds traceable thereto"; and

- "All right, title and interest of [Leonard Baldari and Hiller] in [Reliable], and all the proceeds traceable thereto."  *Id.* at ¶¶ 21(d)-(e), 23(d)-(e).

The criminal case remains open, and neither a criminal forfeiture order nor any judgment of conviction appears on the docket.

Defendants Anchor Tank Lines LLC ("Anchor II") and Tank Acquisition Company LLC ("Tank") (collectively, the "Tank Defendants") are sued in the present action as successors to Anchor I and Reliable.  The Tank Defendants were formed in December 2010 to acquire the assets of Anchor I and/or Reliable after they were forfeited to the Government.  In March 2011, the Tank Defendants purchased almost all of Anchor I's assets.  Like Anchor I and Reliable before them, the Tank Defendants' principal place of business is 19-01 Steinway Street in Queens, New York, and their business is the transport of "oil and other products" in and around New York City.  The Complaint alleges a "complete continuity of operations" between Anchor I and Reliable on the one hand, and the Tank Defendants as their successors.  The Tank Defendants are owned by non-parties to this action.  Defendants Leonard and Robert Baldari are now full time employees of the Tank Defendants.

B.     **Litigation by the Trustees on Behalf of the Funds**

1.   *Demopoulos v. Mystic Tank Lines Corp. [i.e., Anchor I]*, **07 Civ. 9451**

On October 27, 2007, approximately three months after Baldari and Hiller's indictment, the Trustees commenced an action against Anchor I in this Court to recover unpaid contributions to the Funds. *See Demopoulos v. Mytic Tank Lines Corp.*, 07 Civ. 9451 (S.D.N.Y.) ("*Demopoulos I*"), Dkt. No. 1. *Demopoulos I* named only Anchor I as defendant and sought to recover unpaid Fund contributions for the period June 1, 2007, to August 31, 2007. *Id.* at ¶ 9.

On December 6, 2008, the parties in *Demopoulos I* and Leonard Baldari (who was not a defendant in the action) entered into a settlement agreement, which Judge Denny Chin "so ordered" and entered on the docket on January 8, 2009. *Id.*, Dkt. No. 47. The agreement recited that "[Anchor I], the Trustees and Leonard Baldari are desirous of resolving the disputes and disagreements that exist between them." The settlement obligated Anchor I to make future payments to the Funds and pay $584,524.42 plus 8% interest, and provided that "Leonard Baldari, Owner of [Anchor I] hereby undertakes to personally guarantee the liability of [Anchor I] . . . in the amount of $650,000." *Id.*, Dkt. No. 47 at ¶¶ 3, 6. The agreement also provided that if Anchor I sold its stock or "substantially all of [its] assets," the "purchaser or transferee of the stock or assets will be liable for all of the obligations of [Anchor I.]" *Id.*, Dkt. No. 47 at ¶ 17. In a separate personal guaranty, Leonard Baldari warranted that there was "no action, claim, suit or proceeding . . . pending or threatened against or affecting the Guarantor or any of Guarantor's properties before any court . . . which could or might result in any material adverse change [to] the Guarantor." On March 13, 2009, Judge Chin "so ordered" an amendment to the parties' settlement, which added attorneys' fees to the amount owed by Anchor I and reflected that

4

Anchor I's name had changed (from Mystic to Anchor I).  Under the terms of the amended settlement, Anchor I agreed to pay a total of $625,944.79 plus pre-judgment interest.  *Id.*, Dkt. No. 47.

Anchor I paid $90,196.55 before it defaulted and was sold.  On September 15, 2010, judgment was entered to enforce the settlement, adding Baldari as an additional defendant, and ordering payment of $866,238.35, of which $559,803.45 was the unpaid portion of Baldari's guarantee.  *Id.*, Dkt. No. 56.  A virtually identical judgment updating the interest due was entered on the docket on February 8, 2011, for $966.727.83.  *Id.*, Dkt. No. 57.  This amount remains outstanding.

### 2.  *Demopoulos v. Anchor Transit Corp. [i.e., Reliable]*, 08 Civ. 5860

On June 30, 2008, almost one year after Baldari and Hiller's indictment, the Trustees commenced a separate action in this Court against Reliable as the sole defendant to recover unpaid contributions to the Funds.   *See Demopoulos v. Anchor Transit Corp.*, No. 08 Civ. 5860 (S.D.N.Y.) ("*Demopoulos II*"), Dkt. No. 1.[1]  On February 28, 2009, the parties in *Demopoulos II* stipulated to a consent judgment, covering unpaid contributions for the period February 1, 2007 to January 31, 2009, which Judge Victor Marrero "so ordered" and entered on the docket on March 18, 2009.  *Demopoulos II*, Dkt. No. 21.  Robert Baldari signed the stipulation on behalf of, and as President of, Reliable.  *Id.*, Dkt. No. 21 at 3.  Under the terms of the judgment, Reliable was liable to the Trustees for $248,073.32.  *Id.*, Dkt. No. 21.  That amount remains outstanding.

---

[1]     The operative complaint in *Demopoulos II* is not available on the electronic docket, and no party has appended it as an exhibit to any submission.

### 3. *Demopoulos v. Reliable Transit Corp.*, 10 Civ. 8324

In November 2009, Reliable permanently stopped contributing to the Funds.  In January 2010 and again in March 2010, the Funds sent Reliable two notices informing it of the default and demanding payment for withdrawal liability under the terms of the relevant collective bargaining agreement with the Funds.  Reliable failed to make any payment.  On November 4, 2010, the Trustees commenced an action in this Court to recover the amount owed as withdrawal liability.  *See Demopoulos v. Reliable Transit Corp.*, No. 10 Civ. 8324 (*Demopoulos III*), Dkt. No. 1.  Only Reliable was named as a defendant, and it did not appear in the action.  On February 1, 2011, Judge Louis Stanton entered a default judgment against Reliable in favor of the Trustees for $1,365,050.92.  *Id.*, Dkt. No. 7.  This judgment amount also remains outstanding.

### C. The Trustees Appear in Anchor I's Bankruptcy Action

On June 3, 2010, Anchor I filed a petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of New York.  *In re Anchor Tank Lines Corp.*, No. 10-45230 (Bankr. E.D.N.Y.) ("*In re Anchor I*"), Dkt. Nos. 1-4.  Leonard Baldari filed the Affidavit in support of the petition as Chief Executive Officer of Anchor I.  *Id.*, Dkt. No. 2.  Within a week, on June 8, 2010, the Trustees filed a notice of appearance in the Bankruptcy Action as creditors of Anchor I.  *Id.*, Dkt. No. 32.  Ten days later, the Government moved to dismiss the bankruptcy action explaining that Leonard Baldari, the sole shareholder of Anchor I, did not have authority to file the petition because he had forfeited all of his interest in Anchor I to the United States in criminal forfeiture proceedings in *United States v. Baldari. Id.*, Dkt. No. 52 at 1-3.  On June 29, 2010, the bankruptcy action was dismissed on consent.  *Id.* Dkt. Nos. 55 at 2, 57.  Each of the above-mentioned filings was electronically served upon the Trustees.

### D.  Trustees Seek to Intervene in *U.S. v. Baldari*

In an effort to collect on their judgments, the Trustees restrained bank accounts held by Anchor I and Reliable and obtained writs of execution against assets held in those accounts. They sought an execution by the City of New York's Sheriff to seize Anchor I's vehicles and obtained a lien against specific vehicles.  On October 13, 2010, the Government wrote to the Trustees and the Sheriff stating that a sealed forfeiture order in *U.S. v. Baldari* required all of Leonard Baldari's assets and those of Anchor I and Reliable to be paid to the Government to satisfy Baldari's $50 million forfeiture debt.  The Sheriff stopped all collection efforts on behalf of the Trustees.

On December 20, 2010, the Trustees filed a letter in *U.S. v. Baldari*, seeking to intervene and obtain disclosure of the forfeiture order.  *Id.*, Dkt. No. 83.  On March 25, 2011, the district court denied the Trustees' motion.  *Id.*, Dkt. No. 93.

### E.  Trustees Commence the Present Action

The Trustees commenced this action on September 30, 2014, and filed the operative First Amended Complaint (the "Complaint") on January 8, 2015.  The Complaint alleges five causes of action, four of which purport to be based on ERISA as follows:  The Trustees assert one claim solely against the Individual Defendants, alleging that they breached their fiduciary obligations to the Funds under ERISA by failing to make contributions and instead retaining the monies for their own use. The Trustees assert two claims, both purportedly under ERISA, against the Tank Defendants as successors to Anchor I and Reliable -- the first for failure to make contributions to the Funds and the failure (presumably of Anchor I) to make payments under the settlement agreement in *Demopoulos I*; and the second on a theory of unjust enrichment.  The fourth and

7

final purported ERISA claim seeks an accounting from all Defendants "of all sums owed to the Funds," based on the general remedies section of ERISA.  The fifth cause of action, which is against Leonard Bardari, seeks to enforce his personal guaranty of the settlement in *Demopoulos I.*

The Complaint asserts subject matter jurisdiction based on federal claims arising under ERISA, 29 U.S.C. § 1332(e), and presumably relies on supplemental and ancillary jurisdiction for its remaining claims, 28 U.S.C. § 1367(a).

On May 13, 2015, the Tank Defendants filed a Third Party Complaint against the United States for indemnification and breach of contract.

## II.    LEGAL STANDARD

The Individual Defendants move to dismiss the Complaint on the merits as untimely.  On a motion to dismiss on the merits under Rule 12(b)(6), courts accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party.  *See Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014).  In resolving Rule 12(b)(6) motions, courts "may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distribs. Corp. v. Subaru of Am., Inc*., 425 F.3d 119, 122 (2d Cir. 2005).

Federal Rule of Evidence 201 authorizes a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned . . . at any stage in the proceeding," including on a motion to dismiss.  *See, e.g.*, *Kramer v. Time Warner Inc*., 937 F.2d 767, 773 (2d

Cir. 1991).  On a motion to dismiss, courts may take judicial notice of docket sheets and filings in other cases in determining when a claim accrued.  *See, e.g.*, *Staehr v. Hartfrd Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d. Cir. 2008) (stating that, on a motion to dismiss, "it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents" to determine when "inquiry notice" was triggered for statute of limitations purposes in a securities case); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court could take judicial notice").

Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims.  While dismissing claims on statute of limitations grounds at the complaint stage "is appropriate only if a complaint clearly shows the claim is out of time," *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999), "[t]he Second Circuit has approved the consideration of an affirmative defense on a motion to dismiss pursuant to Rule 12(b)(6) if the defense appears on the face of the complaint," *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (*quoting Intuition Consol. Grp., Inc. v. Dick Davis Publ'g Co.*, No. 03 Civ. 5063, 2004 WL 594651 (S.D.N.Y. Mar. 25, 2004))

The Tank Defendants argue that once the Individual Defendants are dismissed, the Court must dismiss the Tank Defendants for lack of subject matter jurisdiction.  In defending against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction by a preponderance of the evidence.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).  A court "may refer to evidence outside the pleadings" in resolving a Rule 12(b)(1) motion.  *Id.*

9

## III.      DISCUSSION

### A. The ERISA Claim Against the Individual Defendants

The first cause of action alleges that the Individual Defendants "caused [Anchor I and Reliable] to not make the required contributions to the Funds," and thereby breached their fiduciary duties to the Funds under ERISA.  The Complaint describes delinquent contributions and failure to pay withdrawal liability that were the subject of the Trustees' previous litigations and judgments against Anchor I and Reliable in *Demopolous I*, *II* and *III*.  The present belated claim for breach of fiduciary duty against the Individual Defendants falls outside the statutory limitations period and is dismissed.

The statute of limitations that applies to actions for breach of fiduciary duty under ERISA states:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1)      six years after
>      (A) the date of the last action which constituted a part of the breach or violation, or
>
>      (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2)      three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  The statute "provides three alternative limitations periods, depending on the underlying factual circumstances."  *Janese v. Fay*, 692 F.3d 221, 227-28 (2d Cir. 2012).

Whichever date is earliest is the applicable bar date.  The first date "is six years from the date of

10

the last action that was part of the breach."  *Id.* at 228.  The second date is "three years, applicable

and beginning when a putative plaintiff has 'actual knowledge' of the violation, defined as

'knowledge of all material facts necessary to understand that an ERISA fiduciary has breached

his or her duty or otherwise violated the Act.'"  *Id.* (quoting *Caputo v. Pfizer, Inc.* , 267 F.3d 181,

193 (2d Cir. 2001)).  The third date -- six years from plaintiffs' discovery of the breach -- applies

only where "a fiduciary: (1) breached its duty by making a knowing misrepresentation or

omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2)

engaged in acts to hinder the discovery of a breach of fiduciary duty."  *Caputo*, 267 F.3d at 190.

The second alternative -- three years from Plaintiffs' actual knowledge -- is controlling

here because it is the earliest of the three dates, and because the third alternative does not apply.

The pleadings and judicially-noticed court filings described above establish that Plaintiffs had

actual knowledge of Defendants' alleged breach no later than 2010.  The Complaint therefore was

required to be filed within three years, or by 2013.  The original Complaint was not filed until

September 30, 2014.  Consequently the ERISA claim against the Individual Defendants is time

barred.

The Trustees do not and cannot dispute that by at least 2009, when the last of the required

payments at issue was not made, the Trustees had actual knowledge that fiduciaries to the Funds

had caused Anchor I and Reliable not to make the payments.  Nothing was hidden or secret.

When the money was not received, it was apparent the payments had not been made.  The failure

to make contributions was the basis for both *Demopfoulos I* and *Demopoulos II*, filed in 2007 and

2008 respectively; and the failure to pay for withdrawal liability was the basis for *Demopoulos III*

filed in 2010.

By 2010, the Trustees knew the identities of all three Individual Defendants as persons who controlled Anchor I and Reliable.  This control -- and its manifestations in the form of signing checks and directing money between accounts -- is the only basis for the fiduciary duty claim against the Individual Defendants.  First, as to Defendant Leanord Baldari, the 2007 Indictment in *United States v. Baldari*, identifies him as the "sole shareholder" of Anchor I.  *U.S. v. Baldari*, Dkt. No. 1, ¶¶ 6-7.  In 2008, Leonard Baldari was a party to and personally guaranteed the *Demopoulos I* settlement between the Trustees and Anchor I.  *Demopoulos I*, Dkt. No. 19, ¶ 6.  In the settlement agreement, he is described as "owner" of Anchor I, and on the signature page, his signature appears twice -- once as "President" of Anchor I and once on his own behalf.  *Id.*  In 2010, in the Anchor I bankruptcy action, in which the Trustees had appeared, Leonard Baldari similarly was described as the Chief Executive Officer and sole shareholder of Anchor I and filed the affidavit in support of Anchor I's bankruptcy petition.  Consequently, the Trustees knew Leonard Baldari was a fiduciary regarding Anchor I's obligations to pay the Funds well in advance of September 2011, and the ERISA fiduciary duty obligation claim against him is time barred.

Second, as to Defendant Robert Baldari, in 2009, he signed the stipulated judgment between the Trustees and Reliable in *Demopoulos II* as President of Reliable regarding Reliable's obligations to make payments to the Funds.  *Demopoulos II*, Dkt. No. 19 at 3.  Finally, as to Defendant Hiller, he was indicted with Leonard Baldari in 2007.  The Indictment describes him as the Chief Financial Officer of Anchor I and the president and 50% owner of Reliable, and seeks to make subject to forfeiture all of his interest in Anchor I and Reliable.  Regardless of when the Trustees first saw the Indictment, they knew of its contents in 2010 when they sought to

intervene in the criminal case and when the Government moved to dismiss the Anchor I

bankruptcy case, in which the Trustees had appeared.

Therefore, by 2009 the Trustees knew that fiduciaries who controlled Anchor I and

Reliable had breached their duty between 2007 and 2009 to ensure that the companies made the

required payments.  By 2010, the Trustees knew the identities of all three Individual Defendants

in relation to Anchor I and Reliable and could definitively infer their attendant fiduciary

obligations to the Funds.  Accordingly, this law suit, which was not commenced until 2014, is

time barred under ERISA's second statutory limitations period -- three years from when the

Plaintiffs had actual knowledge that "an ERISA fiduciary has breached his or her duty."

Contrary to the Trustees' argument, the third period of six years has no application here.

As explained above, the six-year statute of limitations applies "in the case of fraud or

concealment" -- i.e., where "a fiduciary: (1) breached its duty by making a knowing

misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his

detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty."  *Caputo*,

267 F.3d at 190.  This is not a case of fraud because the alleged breach arose from the

nonpayment of amounts due to the Funds, and not any misrepresentation or omission made to

employees or beneficiaries.  This also is not a case of concealment because no one attempted to

conceal the failure to pay.  Either the payments were made or not, and that fact was obvious to the

Funds and their Trustees.  Whether Leonard Baldari disclosed his financial status when he

entered into the settlement agreement in *Demopoulos I* is irrelevant to the violation of the

fiduciary duties at issue -- non-payment of contributions to the Funds that pre-dated the

settlement agreement.

13

The Trustees advance a series of flawed arguments to claim that they never had "actual knowledge" to trigger the three-year statute of limitations.  First, they insist that the Court must refrain from relying on documents not "integral" to the Complaint, such as the Indictment in *U.S. v. Baldari,* to find actual knowledge.  To the contrary, on a motion to dismiss, "[o]f course," a court "may . . . consider matters of which judicial notice may be taken under Fed. R. Evid. 201," such as court filings in another case.  *Kramer*, 937 F.2d at 773.

Second, the Trustees argue that the "mere fact" that the Individual Defendants had been identified in prior filings as principals and senior officers -- "owner," "president," "sole shareholder" and "chief financial officer" -- says nothing about whether they had enough control to disburse the plan assets, and therefore the Trustees did not have actual knowledge of any fiduciary obligation or breach by the Individual Defendants.  The pleadings and other documents considered on this motion refute the Trustees' argument.  The Complaint does not allege any information regarding the Individual Defendants' level of control at Anchor I and Reliable – the only basis for their status as fiduciaries -- that the Trustees did not already know three years before bringing this case.  The only relevant allegations are that the Individual Defendants were principals and/or owners of Anchor I and Reliable (which the Trustees knew by 2010) and that they exercised control over the companies (which the Trustees also knew by 2010).

Third, the Trustees argue that they will not have all the material facts as to the Individual Defendants' breach until they see the plan of distribution of Anchor I's assets as laid out in the criminal forfeiture order.  The criminal forfeiture order and its plan of distribution are irrelevant to the question of when the Trustees knew that fiduciaries breached their duties to the Funds by failing to make certain required payments between 2007 and 2009.

14

The Trustees argue in the alternative that, even if their claim is untimely, the statute of limitations should be tolled "to this day."  However, the Trustees fail to address the threshold issue of whether equitable tolling applies to ERISA fiduciary duty claims, despite and in addition to the six-year "fraud or concealment" limitations period in 29 U.S.C. § 1113.  At least two federal circuit courts have answered in the negative and concluded that the six-year "fraud or concealment" period reflects Congress' limited provision for any tolling.  *See, e.g.*, *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015); *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 (3d Cir. 2001) ("superimposing . . . equitable tolling rules on the statutory limitations scheme set forth in § 1113 would be inconsistent with congressional intent and the clear teachings of the Supreme Court").  Even where not barred outright, equitable tolling of the ERISA statute appears to be highly disfavored.  *See, e.g.*, *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 575 (6th Cir. 2010) ("We have found only one case where this court has equitably tolled ERISA's statute of limitations.").  *Cf. Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir.1999) (explaining that the ERISA statute of limitations provisions requires "strict adherence").  The Second Circuit has stated that "the 'fraud or concealment' provision does not 'toll' the otherwise applicable six-or three-year statute of limitations . . . ; rather, it prescribes a separate statute of limitations of six years from the date of discovery."  *Caputo*, 267 F.3d at 189.  Accordingly, courts in the Second Circuit have analyzed equitable tolling in ERISA cases alleging breach of fiduciary duty.  *See, e.g.*, *Guo v.*

*IBM 401(k) Plus Plan*, --- F. Supp. 3d ----, No. 13 Civ. 8223, 2015 WL 1379788, at *5 (S.D.N.Y. Mar. 26, 2015).[2]

"Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). "Additionally, the burden of proving that tolling is appropriate rests on the plaintiff." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiffs' discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir.1999)).

---

[2]     In concluding that equitable tolling applies to ERISA fiduciary duty claims, *Guo* relies on cases involving denial of benefits under ERISA-governed plans. *See Guo*, 2015 WL 1379788, at *5 (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013) (explaining that "equitable tolling may apply" in long-term disability ERISA claims); *Tuminello v. Aetna Life Ins. Co.*, No. 13 Civ. 938, 2014 WL 572367, at *2 (S.D.N.Y. Feb. 14, 2014) (same); *DeMarco v. Hartford Life & Acc. Ins. Co.*, No. 12 Civ. 4313, 2014 WL 3490481, at *2 (E.D.N.Y. July 11, 2014) (same)). However, ERISA enforcement actions for benefits are not governed by a statute of limitations that provides for a six-year fraud and concealment period as here. ERISA does not specify any limitations period for such actions, which are therefore governed either by contract, *see, e.g.*, *Heimeshoff*, 134 S. Ct. at 604, or the "limitations period . . . specified in the most nearly analogous state limitations statute," *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). Because neither party in the present case contests the general applicability of equitable tolling to ERISA fiduciary duty claims, this Opinion analyzes whether the principle applies to the facts of this case.

The Trustees argue that the Individual Defendants engaged in fraudulent concealment when they "egregiously concealed from Plaintiffs material facts regarding the use or disposition of plan assets." The Trustees essentially claim that tolling is warranted because the Individual Defendants signed the various settlements and stipulated judgments with the Trustees without disclosing the Government's forfeiture claims on the assets of Anchor I, Reliable and Leonard Baldari. However, even if such non-disclosure were fraudulent, it did not "conceal material facts" related to the non-payment of contributions to the Funds between 2007 and 2009 and similarly did not conceal the "nature of the claim" against the Individual Defendants.

On the present record, the Trustees were not prevented from suing the Individual Defendants within the three-year limitations period. Instead, the Trustees made a strategic choice not to pursue the Individual Defendants in the prior actions when their claim would have been timely. Consequently, the Trustees are not entitled to equitable tolling. The ERISA breach of fiduciary duty claim against the Individual Defendants is dismissed as time barred.

**B. Successor Liability of the Tank Defendants**

The three claims against the Tank Defendants solely in their capacity as successors to Anchor I and Reliable are dismissed for lack of subject matter jurisdiction. These are the claims for delinquent payments, unjust enrichment and an accounting.

Although the Complaint alleges subject matter jurisdiction based on ERISA and all three claims against the Tank Defendants mention ERISA, Plaintiff does not argue that these claims arise under ERISA or give rise to federal subject matter jurisdiction. Instead Plaintiff argues that the court may exercise "ancillary jurisdiction," but invokes the principles of supplemental jurisdiction.

17

Ancillary jurisdiction and supplemental jurisdiction, though related, are distinct. Supplemental jurisdiction is codified at 28 U.S.C. § 1367 and typically "involves non-federal, non-diversity *claims* asserted in a case properly in federal court." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3523.2 (3d ed. 2008) (emphasis added). "Ancillary jurisdiction is a common law doctrine that survived the codification of supplemental jurisdiction in 28 U.S.C. § 1367." *Nat'l City Mortgage Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011); *see also Peacock v. Thomas*, 516 U.S. 349, 355 n.5 (1996) ("Congress codified much[, but not all,] of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367.").

Ancillary jurisdiction extends to "related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3523.2 (3d ed. 2008) (emphasis added). "At its heart, ancillary jurisdiction is aimed at enabling a court to administer justice within the scope of its jurisdiction." *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006) (internal quotation marks omitted). There are two "two distinct branches of ancillary jurisdiction": a "federal court may exercise ancillary jurisdiction (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable a court to function successfully, that is, to  manage its proceedings, vindicate its authority, and effectuate its decrees." *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 104-05 (2d Cir. 2001) (quoting *Peacock*, 516 U.S. at 351-52). Among the ways that courts exercise the second branch of ancillary jurisdiction, "[t]he most common . . .  is, probably, to resolve fee disputes between a

party and its attorney arising in litigation in which the attorney represented the party." *Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2d Cir. 2007).

### 1.  Ancillary Jurisdiction

This Court does not possess ancillary jurisdiction over the claims against the Tank Defendants here.  This conclusion is mandated by the Supreme Court's decision in *Peacockv. Thomas*, 516 U.S. 349.

The facts of *Peacock* are similar to those in the present case.  The plaintiff in *Peacock* obtained a judgment against a corporation for violation of fiduciary duties under ERISA.  516 U.S. at 351-52.  When the corporation failed to pay, the plaintiff commenced a new suit to pierce the corporate veil and hold a shareholder of the corporation liable for the outstanding judgment. *Id.*  The district court agreed and entered judgment against the individual shareholder.  *Id.*  The Court of Appeals affirmed.  *Id.*  The Supreme Court reversed, with two independent holdings, both of which are relevant here.

First, the Supreme Court held that plaintiff had not stated a claim arising under ERISA and therefore could not invoke federal subject matter jurisdiction.  "ERISA does not provide for imposing liability for an extant ERISA judgment against a third party."  *Id.* at 353.  The plaintiff's reliance on ERISA § 502(a)(3), which provides for "appropriate equitable relief" to redress ERISA violations, 29 U.S.C.§ 1132(a)(3), was misplaced because (1) the individual defendant was not a "fiduciary to the terminated plan," and (2) § 502(a)(3) does not provide equitable relief "*at large*," but only for the purpose of redressing ERISA violations.  *Id.*  Because the plaintiff alleged "no underlying violation of any provision of ERISA or an ERISA plan [by the individual defendant], neither ERISA's jurisdictional provision nor [federal question

jurisdiction] supplied the District Court with subject-matter jurisdiction." *Id.* at 354 (internal citations, quotation marks and alterations omitted).

Second, the Supreme Court held that federal courts do not "possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. *Id.* at 351. Because the plaintiff failed to demonstrate -- as was his burden in invoking the jurisdiction of the federal courts -- that his suit fit into either of the two branches of ancillary jurisdiction, the Court dismissed the case against the shareholder. The Supreme Court reiterated that a court does not have ancillary jurisdiction "in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357.

Applying these principles, this Court lacks both federal question jurisdiction and ancillary jurisdiction over the claims against the Tank Defendants based on successor liability. As Judge Deborah Batts recently explained in a similar action against the Tank Defendants brought by different trustee plaintiffs:

> As in *Peacock*, Plaintiffs filed an earlier ERISA claim and obtained a judgment against employers who had failed to make the required contributions to an employee benefit plan. Like the Plaintiff in *Peacock*, when Plaintiffs were unable to collect on that judgment, they filed a second ERISA action which sought to impose liability on entities that had not been parties to the first action. And like the Plaintiff in *Peacock*, Plaintiffs seek to apply the earlier judgment to these entities under a corporate identity theory, here, that Defendants are the successors or alter egos [of the employers].

*Romita v. Anchor Tank Lines, LLC*, No. 11 Civ. 9641, 2013 WL 432903, at *3 (S.D.N.Y. Feb. 1, 2013) ("*Romita I*") (collecting cases holding that *Peacock* applied to successor liability claims under ERISA). Likewise here, the Trustees have not alleged that the Tank Defendants committed any independent violation of ERISA, and the Court does not possess ancillary jurisdiction

because Plaintiffs' lawsuit seeks "to impose an obligation to pay an existing federal judgment on [the Tank Defendants who are] not already liable for that judgment." *Peacock*, 516 U.S. at 357.

### 2. Supplemental Jurisdiction

Assuming for purposes of this motion that this Court has supplemental jurisdiction over the claims against the Tank Defendants, it declines to exercise that jurisdiction. The Trustees' claim against the Individual Defendants for breach of their ERISA fiduciary obligations, although now dismissed, was a claim that arose under ERISA and provided federal question jurisdiction over this action. *See* 29 U.S.C. § 1132(e). This Court therefore has supplemental jurisdiction over the claims against the Tank Defendants to the extent that they "form part of the same case or controversy under Article III," *i.e.*, if they arise from a common nucleus of operative fact. 28 U.S.C. § 1367(a). To the extent the Court has supplemental jurisdiction, the Court declines to exercise it because "all claims over which it has original jurisdiction" have been dismissed. *Id.* § 1367 (c)(3).[3]

The Trustees' reliance on *Romita v. Anchor Tank Lines, LLC*, No. 11 Civ. 9641, 2014 WL 1092867, at *3 (S.D.N.Y. Mar. 17, 2014) (*Romita II*), to urge that the Tank Defendants should remain in this case is misplaced. *Romita II* followed *Romita I* after Judge Batts allowed the plaintiffs in that case to amend the complaint to plead subject matter jurisdiction based on diversity. Instead of then alleging diversity, the plaintiffs "include[ed] an ERISA claim against Individual Defendants in their Second Amended Complaint," which "provided an independent basis for jurisdiction" and allowed Judge Batts to "exercise supplemental jurisdiction over

---

[3]     To the extent the Trustees can raise these claims in state court, they will not be prejudiced by this exercise of discretion because the statute of limitations for the three claims against the Tank Defendants will be tolled pursuant to § 1367(d).

Plaintiffs' claim against the [Tank Defendants]." *Romita II*, 2014 WL 1092867*2 n.2.  In *Romita II*, unlike here, the ERISA claim was not time barred, and "the district court ha[d not] dismissed all claims over which it has original jurisdiction," so there was no basis to declining the exercise of supplemental jurisdiction.  28 U.S.C. § 1367(c).

## C.  Leonard Baldari's Personal Guaranty

Finally, the Trustees' claim to enforce Leonard Baldari's personal guaranty in *Demopoulos I*, Dkt. Nos. 56, 57, is also dismissed for lack of subject matter jurisdiction, and in the alternative is barred by res judicata and merger.

### 1.  Jurisdiction

I do not have jurisdiction over this claim under the enforcement branch of ancillary jurisdiction.  The judge assigned to *Demopoulos I* -- if there were such a judge -- would.  "A federal court does not automatically retain jurisdiction to hear a motion to enforce or otherwise apply a settlement in a case that it has previously dismissed."  *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 305 (2d Cir. 2014).  "Such motions are essentially state-law contract claims."  *Id.* "There are only two ways in which a district court may retain ancillary jurisdiction to enforce the terms of a settlement agreement: it may expressly retain jurisdiction over enforcement of the agreement in an order of the court, or it may incorporate the terms of that agreement in such an order."  *Hendrickson v. United States*, No. 14-1958, 2015 WL 3953275, at *4 (2d Cir. June 30, 2015).  Here, Judge Chin did both.  *See Demopoulos I*, Dkt. No. 47 (So-ordered settlement agreement incorporates Leonard Baldari's personal guaranty and provides, "The Court shall retain jurisdiction over this action."); *Demopoulos I*, Dkt. No. 49 (So-ordered Stipulated Amended Judgment states, "Anchor [I] is bound by each and every term of the Settlement

22

Agreement, 'so ordered' by the Court"). Although the case is currently unassigned -- following

the elevation of Judge Chin to the Second Circuit and retirement of Judge Owen -- any Judge who

is assigned to *Demopoulos I* would have ancillary jurisdiction over this claim.

I have not been assigned *Demopoulos I* and therefore do not have ancillary jurisdiction.

*See Vill. of W. Hampton Dunes v. New York*, No. 14-CV-3299, 2015 WL 868966, at \*11

(E.D.N.Y. Mar. 2, 2015) (finding no ancillary jurisdiction where "Plaintiff commenced a separate

action to enforce a settlement agreement approved by a different judge [in the same district]

under a different docket number," where the judge in the older case had retained jurisdiction over

enforcement). *But see Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d

912, 917 (7th Cir. 2001) (stating that "it is the court rather than the judge that retains jurisdiction"

over settlement agreements for ancillary jurisdiction purposes). The purpose of the enforcement

branch of ancillary jurisdiction is for a court to "manage *its* proceedings, vindicate *its* authority,

and effectuate *its* decrees," not that of any other court. *Kokkonen v. Guardian Life Ins. Co. of

Am.*, 511 U.S. 375, 380 (1994) (emphases added).

I also do not have supplemental jurisdiction over this claim as "so related" to the breach

of fiduciary duty claim against the Individual Defendants as to form part of the same case or

controversy. *See* 28 U.S.C. § 1367(a). There is no "common nucleus of operative fact," *Achtman

v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006), underlying the two

entirely distinct claims -- one for breach of fiduciary duty, and one a state-law claim for breach of

contract. *See, e.g.*, *Kokkonen*, 511 U.S. at 380 ("[T]he facts underlying respondent's dismissed

claim for breach of agency agreement and those underlying its claim for breach of settlement

agreement have nothing to do with each other.").

23

### 2.   Res Judicata and Merger

In the alternative, to the extent I have jurisdiction, the principles of res judicata and merger bar the claim against Leonard Baldari for his liability under the personal guaranty.  Under the doctrine of res judicata, which is very similar to merger, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).  Here, the final judgment against Leonard Baldari in *Demopoulos I* precludes the Trustees from relitigating the issues that were raised or could have been raised in that action.

The Trustees argue that because Leonard Baldari "waive[d] . . . all rights to interpose any defenses other than actual payment of the moneys owed in any action brought to enforce th[e] Guaranty," he may not raise the affirmative defense of res judicata.  However, "a court is free to raise that defense [of res judicata] sua sponte, even if the parties have seemingly waived it." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 398 n.4 (2d Cir. 2003); *see also Arizona v. California*, 530 U.S. 392, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised.").  "This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412.

Sua sponte dismissal of the claim to enforce Baldari's personal guaranty in *Demopoulos I* is warranted.  The Complaint alleges that "Defendant Leonard Baldari is personally liable under the terms of the personal guaranty he executed pursuant to the settlement agreement" in *Demopoulos I*, and that after the settlement agreement was breached, he "made no payments as

24

required."  The Trustees seek $966,727.83 for which Baladri is individually liable to the Funds.

However, the Trustees have already obtained a judgment granting the same relief for the same

harm in *Demopoulos I*.  *Demopoulos I*, Dkt. No. 57.

> It is not clear from [the] [C]omplaint whether [the Trustees are] suing [Baldari] on the prior judgment or whether [they are] suing for a second time on the original claim.  If it is the latter, [they have] no cause of action.  'Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises.'  If it is the former, suit on the judgment is a useless act, giving [the Trustees] no greater security than [they] already had and imposing an unnecessary burden on an already overburdened court.

*Davis v. Musler*, 713 F.2d 907, 917-18 (2d Cir. 1983) (Van Graafeiland, J., concurring) (quoting

*Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir.1972)).

The Trustees erroneously argue that that the present cause of action is based on a different

"set of facts," namely Baldari's deception regarding his ability to satisfy the personal guaranty,

that could not have been raised in *Demopoulos I*.  Even assuming that Baldari's deception is

relevant, res judicata would apply.  No later than October 2010, the Government wrote the

Trustees a letter informing them of Baldari's substantial debt to the Government.  The final

judgment was entered on the docket in February 2011, more than three months later.  To the

extent Baldari's omission was relevant to enforcing the judgment against him based on the

personal guaranty, the Trustees could have raised the issue in *Demopoulos I*.

## IV.     CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are GRANTED.

No later than **July 27, 2015**, the Tank Defendants shall file a letter on ECF explaining

how they plan to proceed with their Third Party Complaint.

The Clerk of Court is directed to close the motions at Dkt. Nos. 22 and 28, and terminate all Plaintiffs from this action.

SO ORDERED.

Dated: July 27, 2015
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**